# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 743 | **DATE** | 5/22/2002 |
| **CASE TITLE** | LINDA K. GALLO vs. ADVOCATE HEALTH CARE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Advocate's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 2 3 2002 | |
| | Notified counsel by telephone. | | date docketed | 42 |
| ✓ | Docketing to mail notices. | | CDY docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**MAY 2 3 2002**

LINDA K. GALLO,

Plaintiff,

v.

ADVOCATE HEALTH CARE,

Defendant.

01 C 0743

Judge John W. Darrah

## MEMORANDUM OPINION AND ORDER

Plaintiff, Linda Gallo ("Gallo"), a former employee of Defendant, Advocate Health Care ("Advocate"), brought suit against Defendant, alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; sex discrimination in violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d); and retaliation in violation of Title VII and the EPA. Presently before the Court is Advocate's Motion for Summary Judgment.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Gallo is a medical doctor who completed a one-year internship at Rush Presbyterian St.



Luke's Hospital ("Rush") from 1981 to 1982 and then began a general pediatrics residency. (Def.'s 56.1(a)(3) Statement ¶ 4). From 1994 to 1996, Gallo worked as an assistant professor at Northwestern University in the Department of Pediatrics at Children's Memorial Hospital, where she had a starting salary of $80,000. During this time, Gallo conducted patient care and had teaching responsibilities. (Id., at ¶ 5). During the period of time between her residency and her employment with Northwestern University, Gallo worked at Rush for a year for the Illinois Department of Education as a pediatric consultant from 1986 through 1991, and, for three years, as a clinical associate with the National Institute of Health, where she did clinical and laboratory research and patient care. (Id, at ¶ 6).

In October 1996, Gallo received an offer from Hope Children's Hospital ("Hope"), which is owned and run by Advocate. (Def.'s 56.1(a)(3) Statement ¶¶ 1, 7). Gallo's contract at Hope provided for an annual salary of $95,000, which was an $8,000 increase over her previous salary at Children's Memorial Hospital. (Id., at ¶ 8). Gallo's annual gross salary in 1997 was $94,607.44. (Plaint.'s 56.1(a)(3) Statement ¶ 63). Gallo was the only female director in the department. The other male directors included Dr. Larry Roy ("Roy"), the Program Director of the Pediatric Residency Program, and Dr. Larry Desch, the Director of Developmental and Behavioral Pediatrics.

Gallo's overall responsibilities as Director of In-Patient Services at Hope included: monitoring patient care for quality assurance; ensuring and improving the quality standards of pediatric medicine; educating and evaluating pediatric medical students; supervising the pediatric clinical care and patient management provided by pediatric residents, off-service residents, and medical students on the Pediatric Medical-Surgical Units; improving the quality of medical education provided to residents and medical students; and administrative duties. These

2

responsibilities included: attending rounds with medical pediatric trainees; reviewing admission histories, physicals, daily progress notes, and assessments and plans for patients; and contributing to morning reports. (Def.'s 56.1(a)(3) Statement ¶¶ 36, 38). Gallo also participated in committee work within the Department of Pediatrics. (Id., at ¶ 37).

Gallo supervised, evaluated, and assisted in the development of residents and medical students under the guidance and approval of Roy. (Def.'s 56.1(a)(3) Statement ¶ 39). Other doctors in the department coordinated with and reported certain information to Gallo with respect to quality assurance and quality improvement of patient care. However, none of these doctors were supervised by Gallo, and none were administratively or professionally responsible to Gallo. (Id., at ¶ 16).

Roy has the primary and ultimate responsibility for the teaching and training of residents. (Def.'s 56.1(a)(3) Statement ¶ 18). Prior to his promotion to this position, Roy was the Director of Inpatient Services at Christ Hospital - the position Gallo held at Advocate. (Id., at ¶ 34). In his position, Roy oversees all of the other doctors, including the directors, who are involved in the teaching and training of the pediatric residents as well as four chief residents, two assistants, and one secretary. (Id., at ¶ 17). However, the sub-specialists of the teaching program do not report to Roy in matters of clinical affairs - only in their teaching duties. (Roy Dep., p. 45). The doctors Roy had "oversight" over included Gallo, Dr. Kenneth Jordan, Dr. Ramzan Shahid, and Dr. Larry Desch ("Desch"). (Id., at ¶ 19; Roy's Dep. p. 45).

Dr. Roy's annual gross salary in 1997 was $176,283. (Plaint.'s 56.1(a)(3) Statement ¶ 64). Roy's annual gross salary was $185,369.79 in 1998; $192,564.65 in 1999; and $219,686.58 in 2000. (Id., at ¶¶ 65-67). Roy's responsibilities included: obtaining and maintaining accreditation for the Residency Program; reviewing and screening applications of the candidates who apply to the

3

residency program; interviewing all applicants to the residency program; licensing issues pertaining to residents; conducting educational sessions with residents; attending meetings to address residents involved in a sentinel event or adverse outcome; conducting two performance evaluations each year of the first-, second-, and third-year residents, handling complaints involving work done in the Pediatric Residency Program; developing curriculum for the teaching of residents and ensuring such curriculum meets the requirements of the American Board of Pediatrics and the Accreditation Counsel on Graduate Medical Education; and service of numerous committees within the institution and within the affiliate medical schools. (Def.'s 56.1(a)(3) Statement ¶¶ 20-33).

Desch, the Program Director of Development and Behavioral Pediatrics Program, signed a three-year contract in August 1996 that provided an annual salary of $110,000 for the first two years and $115,000 for the third year of the contract. (Def.'s 56.1(a)(3) Statement ¶ 49). Desch renewed his contract in 2000, receiving an annual salary of $115,000. (Id., at ¶ 50). Desch's responsibilities included: providing clinical leadership and program development direction to the development programs to ensure that maximum quality medical care is provided to pediatric patients; supervising residents, nursing and technical personnel, therapists, visiting faculty, and medical students; teaching, supervising, and monitoring the activities of the pediatric residents and medical students to ensure the effective integration of high-quality patient care and medical evaluation; providing input into the annual budget; and ensuring overall quality patient care and development of clinical protocols and quality improvement initiatives. (Id., at ¶ 51).

Gallo's original contract expired in December 1998. (Plaint.'s 56.1(a)(3) Statement ¶ 85). In March 1999, Advocate tendered Gallo a new contract that did not contain a raise or identify additional duties that Gallo had undertaken. (Id., at ¶ 91). Gallo spoke with Advocate personnel

4

about her disagreement with the new contract. (Id., at ¶¶ 92, 95). In May 2000, Gallo was still working without a contract. At that time, Advocate changed her status to part-time and decreased her benefits. (Id., at ¶ 118).

In August 2000, Advocate provided Gallo a new contract which provided for a salary of $105,000. (Def.'s 56.1(a)(3) Statement at ¶10). Gallo believed that the contract was incomplete. On August 14, 2000, Gallo, in both written and verbal communication, outlined a counter-offer to the new contract offer. The counter-offer included a salary of $150,000, a change in her enumerated job duties, and a return to full-time status. The counter-offer was rejected. (Plaint.'s 56.1(a)(3) Statement ¶ 78).

On September 13, 2000, Gallo filed a charge with the Equal Employment Opportunity Commission asserting that she was being discriminated against based upon her sex and in violation of the EPA. (Plaint.'s 56.1(a)(3) Statement ¶ 79). Within one week, Gallo's employment at Advocate was terminated for failure to sign her new contract. (Def.'s 56.1(a)(3) Statement at ¶10). On October 24, 2000, Gallo amended her EEOC charge to include a claim of retaliation. (Plaint.'s 56.1(a)(3) Statement at ¶ 80).

In her four years of employment with Advocate, Gallo never received a negative performance evaluation. (Plaint.'s 56.1(a)(3) Statement ¶ 68). Gallo did not receive an increase in salary in her four years of employment at Advocate. Sulayman does not know why Gallo did not receive any increase in salary during her employment. (Sulayman Dep., p. 103). In August 1999, Sulayman may have informed Gallo that there were no salary increases because of a budget freeze. (Id., at p. 107). However, Robert Pekofske ("Pekofske"), Advocate's Chief Financial Officer, and Carol Schneider ("Schneider"), Advocate's Chief Executive Officer, were unaware of a budget freeze in 1999 and

5

2000. (Pekofske Dep., p. 164; Schneider Dep., p. 43-44).

Title VII makes it unlawful for an employer to fail or refuse to hire an individual, or otherwise discriminate against an individual with respect to her compensation, based on that person's sex. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination through either direct or circumstantial evidence or the indirect burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999) (*Jackson*). Direct evidence is defined as "evidence 'which, if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption.'" *Plair v. E.J. Brach & Sons*, 105 F.3d 343, 347 (7th Cir. 1997) (citation omitted). In an employment discrimination case, direct evidence must speak directly to the issue of discriminatory intent, and it must relate to the specific employment decision in question. *Cowen v. Glenbrook Security Serv., Inc.*, 123 F.3d 438, 443 (7th Cir. 1997). Plaintiff has not presented any direct evidence of discrimination; thus, the focus is on the *McDonnell Douglas* burden-shifting method. See *Credo v. Zema Systems Corp.*, 944 F.Supp. 677, 682 (N.D.Ill. 1996) (Title VII claims are analyzed according to *McDonnell Douglas*).

Under the *McDonnell Douglas* burden-shifting test, the plaintiff must first establish a *prima facie* case. *Jackson*, 176 F.3d at 982. If the plaintiff establishes a *prima facie* case, a rebuttable presumption is created; and the employer must come forward with evidence of a legitimate, nondiscriminatory reason for its actions. If the employer meets this requirement, the burden shifts back to the plaintiff to demonstrate that reasons proffered by the employer are actually a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) (*Grube*).

6

I. Title VII Claim

To establish a *prima facie* case of sex discrimination, a plaintiff must establish that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated persons outside of the protected class more favorably. *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 752 (7th Cir. 2002) (*Patt*).

The parties do not dispute that Gallo has established the first three elements of a *prima facie* case.

Gallo contends that Roy and/or Desch were similarly situated doctors who earned a greater salary. Roy did make a greater salary than Gallo. Advocate argues that Roy is not similarly situated because he had greater responsibilities and his salary was appropriate for his experience.

The undisputed facts set forth above demonstrate that material questions of fact remain whether Roy is a similarly situated employee that was treated more favorably than Gallo. It is undisputed that Roy received a greater salary and that he received increases in his salary, while Gallo did not. Furthermore, Gallo's and Roy's responsibilities overlapped in many areas, and material questions of fact remain whether their job responsibilities were equivalent.

Also, material questions of fact exist as to whether Desch is a similarly situated employee. The above undisputed facts demonstrate that Gallo and Desch had many similar responsibilities and that he was treated more favorably than Gallo.

Advocate also argues that summary judgment is proper because Gallo cannot establish that Advocate's proffered reason for any differential in pay was a pretext to discrimination.

Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani*

7

*v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000).

Here, Advocate states that doctors are compensated not by the basis of their sex but by the position they occupy and the level of clinical, academic, and administrative responsibilities necessary to fulfill their positions. Gallo has presented evidence that, as the only female director, she was offered less salary than other directors and that she did not receive an increase in her salary during her tenure at Advocate. However, male directors were paid more and did receive increases in salary. As set forth above, questions of material fact exist whether these other directors were similarly situated. Furthermore, Gallo was informed by Saluyman that she did not receive an increase because of a budget freeze. The truth of this statement is an issue in light of Advocate's Chief Executive Officer and Chief Financial Officer not being aware of such a freeze. Accordingly, questions of material fact exist whether Advocate's proffered reason for the difference in Gallo's salary was a pretext to discrimination.

II. Equal Pay Act Claim

To establish a *prima facie* case for a violation of the EPA, a plaintiff must demonstrate that: (1) different wages are paid to employees of the opposite sex; (2) the employees do equal work that requires equal skill, effort, and responsibility; and (3) the employees have similar working conditions. *Markel v. Board of Regents of the Univ. of Wisconsin Sys.*, 276 F.3d 906, 912-13 (7th Cir. 2002) (*Markel*). The jobs that are compared must be substantially equal, based on actual job content and performance – not job titles, descriptions, or classifications. *Markel*, 276 F.3d at 913. The terms "equal skill, effort, and responsibility" constitute separate tests, each of which must be met to establish a *prima facie* case. *Stopka v. Alliance of America Insurers*, 141 F.3d 681, 686 (7th Cir. 1998).

If a plaintiff establishes a *prima facie* case, the employer may respond with an affirmative defense. The affirmative defense must show that the pay differential is due to a merit system, a seniority system, a system which measures earnings by quantity or quality, or any other factor other than sex. *Markel*, 276 F.3d at 913.

The parties do not dispute that different wages were paid to employees of the opposite sex. As stated above, material questions of fact exist whether Gallo does work of equal responsibility to those doctors, under similar working conditions, who are paid higher salaries than she receives. Therefore, material questions of fact exist whether Gallo has established a *prima facie* case under the EPA.

Advocate argues that summary judgment is still proper because Gallo has failed to refute Advocate's affirmative defense that any difference in pay was due to a factor other than sex – doctors are compensated by the position they occupy and the level of clinical, academic, and administrative responsibilities necessary to fulfill their positions. As stated above, material questions of fact exist as to whether the pay differential was actually due to the doctors' level of responsibilities and if those responsibilities were essentially equivalent. Accordingly, summary judgment on Gallo's EPA claim is not proper.

III. Retaliation Claim

To establish a *prima facie* case of retaliation, the plaintiff must show that (1) she engaged in statutorily protected activity by complaining about discrimination, (2) she was the object of an adverse employment action, and (3) that there is causal link between the protected expression and the adverse job action. *Patt*, 280 F.3d at 754. A plaintiff demonstrates a causal link between her opposition to unlawful discrimination and the adverse employment action by showing that the

adverse action would not have occurred "but for" the protected expression. *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1146 (7th Cir. 1997).

The parties do not dispute that Gallo has established the first two elements. As to the third element, Gallo must demonstrate that Advocate's decision to terminate her because she never signed the employment contract was linked to her prior assertion of her protected rights.

In the present case, Advocate provided a contract to Gallo offering her a pay increase of $10,000. Gallo thought the contract was incomplete, and Gallo provided Advocate with a counter-offer. Gallo informed Advocate of her belief that the contract was incomplete and unfair because other male directors were being paid greater wages. Gallo had never received a negative evaluation while in Advocate's employ, and she continued to work for Advocate for months without a signed contract. Furthermore, Advocate has not provided any evidence that Gallo was warned that she, or any other employee, was required to have a signed contract to continue working. To the contrary, Advocate discussed the contract with Gallo on several occasions and was aware that Gallo had not signed the contract because of several issues that she had with the contract. Less than a week after filing her EEOC charge, Gallo was terminated. Based on these facts, material questions of fact exist whether there is a causal link between Gallo's opposition to the alleged unlawful discrimination and her adverse employment action.

For the forgoing reasons, Advocate's Motion for Summary Judgment is denied.

Dated: May 22, 2002

JOHN W. DARRAH
United States District Judge